UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHAEL R. GOODWIN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:12-cv-00371-MJK |
| | ) | |
| MEDPRO, et al., | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OF DECISION[1]**

Michael Goodwin's second amended complaint (ECF No. 29) names as defendants a number of correctional officers and medical providers from the Somerset County Jail in connection with Goodwin's incarceration at that facility from January 29 through February 5, 2010.  Goodwin claims that these individuals were deliberately indifferent to what appears to have been a serious medical condition involving his bladder and kidneys.  Goodwin explains that on February 5, 2010, he was transferred to the Maine Correctional Center in Windham, Maine, to begin serving his sentence.  He again experienced pain and distress and on February 9, 2010, Sergeant Gary Beaulieu, a state correctional officer, responded to Goodwin by taking him to the medical unit and then placing him in administrative segregation until Goodwin was transferred to Mercy Hospital later that same day.  Goodwin has now sued Beaulieu, claiming that Beaulieu was also deliberately indifferent to his serious medical needs, and Beaulieu has moved to dismiss the complaint against him.  I now grant Beaulieu's motion.

---

[1]     Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

**COMPLAINT ALLEGATIONS**

The allegations pertaining to Beaulieu are found within paragraphs fifty-four through sixty-one of the second amended complaint.   All of those allegations relate to events occurring on February 9, 2013, at the Maine Correctional Center in Windham, Maine.   There is no allegation in the complaint that Beaulieu had contact with Goodwin either before or after that date.   The complaint itself describes a series of events that began at the Somerset County Jail on January 29, 2010, and culminated in Goodwin's admission to Mercy Hospital sometime during the afternoon of February 9, 2010.   On February 9, 2010, Goodwin's mental condition began to deteriorate because for over one week he had experienced severe pain, inability to sleep, and a full bladder with an inability to urinate.  (Sec. Am. Compl. ¶ 54.)  As a result of these events, Goodwin cut his thumbs with a razor blade, not to commit suicide but to have medical personnel pay attention to his serious medical condition.  (Id. ¶ 55.)  He pressed the emergency button in his cell, causing a pod officer to respond, who in turn notified Sergeant Gary Beaulieu who responded to the cell.  (Id. ¶¶ 56-57.)

Goodwin told Beaulieu he was in constant pain, had been diagnosed with urinary tract infections, and had not slept for three days.  (Id. ¶ 58.)  Beaulieu took Goodwin to the medical unit and a nurse catheterized 700ml of urine from Goodwin's bladder.  Goodwin overheard another officer tell Beaulieu that he had witnessed Goodwin awake and in distress for the last three nights.  (Id. ¶ 59.)  Beaulieu had actual knowledge of Goodwin's serious medical condition and made notations on prison records regarding his condition.  In order to insure the security and orderly management of the facility, rather than returning Goodwin to his cell Beaulieu placed him in administrative segregation.  (Id. ¶ 60.)

2

That same morning[2], February 9, 2010, Goodwin again told the duty nurse his bladder was full and he could not urinate.  Later that morning the nurse practitioner came on duty, examined Goodwin, and eventually received an order to transfer him to Mercy Hospital where he received treatment and relief from his symptoms.  There are no further allegations pertaining to Sergeant Beaulieu anywhere in the second amended complaint, save the conclusory statement, "Beaulieu failed to respond reasonably to Plaintiff's serious medical need."  (Id.)

DISCUSSION

A.    **Standard of Review**

Rule 12 of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for, among other things, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To state a claim, a plaintiff must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction";  (2) "a short and plain statement of the claim showing that the pleader is entitled to relief";  and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a).  To decide a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a claim for recovery that is "'plausible on its face.'"  Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted)).  "A claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id.

---

[2]    It is not clear to me whether the hospitalization occurred on that date, February 9, or the next morning, February 10.  Paragraphs fifty-four through sixty of the complaint clearly describe events involving Beaulieu and occurring on February 9.  Paragraph sixty-one begins "[o]n the morning of February 9, 2010, Plaintiff *again* told the on duty nurse that . . ." (emphasis added).  In context it appears the subsequent events may have occurred the next morning after Goodwin had been placed in segregation, but that is not what the document actually says.  In terms of my analysis it does not make any difference as to Beaulieu's liability.

(quoting Iqbal, 556 U.S. at 678). A plaintiff's complaint need not provide an exhaustive factual account, only a short and plain statement. Fed. R. Civ. P. 8(a). However, the allegations must be sufficient to identify the manner by which the defendant subjected the plaintiff to harm and the harm alleged must be one for which the law affords a remedy. Iqbal, 556 U.S. at 678. Legal conclusions couched as facts and "threadbare recitals of the elements of a cause of action" will not suffice. Id. See also Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011.)

B.      **The Deliberate Indifference Standard**

A state correctional officer such as Beaulieu may be liable if he treats prisoners with "deliberate indifference to serious medical needs." Feeney v. Corr. Med. Servs., 464 F.3d 158, 161 (1st Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 105-106 (1976)). Deliberate indifference requires "the complainant [to] prove that the defendants had a culpable state of mind and intended wantonly to inflict pain . . . or actual knowledge [or wilful blindness] of impending harm, easily preventable." DeRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991) (citations omitted). The concept of deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable," Feeney, 464 F.3d at 162 (quoting Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993)).

A trial-worthy claim requires that the plaintiff "satisfy both a subjective and objective inquiry." Leavitt v. Corr. Med. Servs., 645 F.3d 484, 497 (1st Cir. 2011). The subjective inquiry calls for evidence that a defendant possessed a culpable state of mind amounting to "deliberate indifference to an inmate's health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). The objective inquiry concerns the harm or need in question, which must involve "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" Id. at 843 (quoting Helling v. McKinney, 509 U.S. 25, 35 (1993)). See also

4

Burrell v. Hampshire County, 307 F.3d 1, 8 (1st Cir. 2002) ("[T]he deprivation alleged must be, objectively, sufficiently serious.").  A medical need is "serious" if it has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would recognize a need for medical intervention.  Leavitt, 645 F.3d at 497;  Gaudreault v. Mun. of Salem, 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991).

**C.    Discussion**

For purposes related to this motion there is no dispute about the objective component of the deliberate indifference inquiry, i.e., Goodwin had a serious medical condition.  Nor is there any dispute that Beaulieu knew of the medical condition and that Goodwin was hospitalized shortly after Beaulieu became aware of the situation.  Goodwin's theory of liability against Beaulieu is based upon Beaulieu's decision to place Goodwin in administrative segregation after he had taken him to receive the initial treatment from the medical providers.  The complaint alleges the following chronology of events:  (1) Goodwin cut his thumbs in a "suicide gesture" to get attention;  (2) Beaulieu was called to Goodwin's cell by another officer;  (3) Beaulieu took Goodwin to the medical unit for treatment;  (4) Beaulieu learned in more detail about the serious nature of the pain and discomfort experienced by Goodwin;  (5) Beaulieu did not return Goodwin to his cell, instead placing him in administrative segregation;  and (6) within twenty-four hours Goodwin was taken to a hospital and received significant treatment.

The allegations of the complaint do not claim that Beaulieu placed Goodwin in administrative segregation prior to obtaining medical treatment nor for any punitive purpose. Rather, they allege that Beaulieu claimed to have placed Goodwin in administrative segregation for the reasons of "security and orderly management of the facility" (Sec. Am. Compl. ¶ 60), reasons that do not run afoul of any constitutional prohibition.  There are no factual allegations

regarding the parameters of the administrative segregation or any explanation regarding the conditions inherent to that status.  Instead, in his opposition, by way of argument, Goodwin asserts for the first time that Beaulieu's decision to place him in administrative segregation added "yet another barrier to Plaintiff's medical care" and that "his wait to receive proper medical attention was delayed and his pain and suffering was unnecessarily prolonged."  (Mem. In Opp. at 5.)  This conclusion cannot fairly be inferred from the facts alleged in the complaint and is actually inconsistent with the allegations that Beaulieu took plaintiff to the medical department upon hearing of his problems;  that plaintiff received a catheterization there;  that plaintiff the same morning received visits from the nursing staff (despite being placed in administrative segregation);  and that plaintiff was later that day transported to the hospital.

Goodwin argues that a factfinder should be allowed to infer that Beaulieu's placement decision was a choice that equated with deliberate indifference to a serious medical need because it unnecessarily delayed the receipt of treatment.  But under the <u>Iqbal</u> pleading standard, there are no *facts* pled that would support the argument that administrative segregation caused any delay in treatment at all.  In fact, the allegations pertaining to Beaulieu show that he almost immediately took Goodwin to medical personnel where Goodwin received some type of temporary relief from his symptoms.  Within a very short time thereafter Goodwin had left the facility and was on his way to the hospital.  It simply is not plausible to infer that Beaulieu's placement decision was undertaken with the subjective intent of delaying treatment for Goodwin or causing wanton pain and suffering.  At a minimum the complaint would have to allege *facts* that support an inference that Beaulieu knew or should have known that it would take longer to transfer a prisoner from administrative segregation to a hospital than from his cellblock to a

6

hospital.  There are no such allegations in the complaint.  The motion is granted and Sgt.

Beaulieu is dismissed as a defendant.


*So Ordered.*

September 18, 2013                                    /s/ Margaret J. Kravchuk
                                                      U.S. Magistrate Judge