UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHAEL R. GOODWIN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:12-cv-00371-MJK |
| | ) | |
| MEDPRO, et al., | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OF DECISION[1]**

Medpro Associates, Loreen Maloney, and Rhonda Walters have moved for the dismissal of the claims Michael Goodwin presses against them in his second amended complaint, alleging that this court does not have "jurisdiction" to consider a claim for medical malpractice at this juncture because of the provisions of the Maine Health Security Act, 24 M.R.S. §§ 2501, et. seq., and that Goodwin's second amended complaint fails to state a claim under 42 U.S.C. § 1983. (Am. Motion to Dismiss, ECF No. 39.) The motion is granted, in part, based on Goodwin's failure to state a claim against Medpro Associates, and otherwise denied.

Neither the second amended complaint nor plaintiff's response to the motion suggests that this action is brought as a complaint for medical malpractice that would implicate the Maine Health Security Act. This court has consistently held that complaints against medical providers alleging constitutional violations or federal statutory violations do not require submission to a prelitigation medical malpractice screening panel. Faulkingham v. Penobscot Cnty. Jail, 350 F. Supp. 2d 285, 287-288 (D. Me. 2004); Ferris v. Cnty. of Kennebec, 44 F. Supp. 2d 62 (D. Me. 1999) (retaining federal constitutional claim despite challenge based on the Maine Health

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

Security Act, but dismissing state law malpractice claim); cf. Hewett v. Inland Hosp., 39 F. Supp. 2d 84 (D. Me. 1999) (retaining federal EMTALA claim despite challenge based on the Maine Health Security Act, but allowing negligence claim to proceed through prelitigation screening panel).  After all, mere disputes about the best course of treatment and the medically appropriate standard of care are not actionable under 42 U.S.C. § 1983.  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Goodwin's second amended complaint is not a medical malpractice action. To the extent the motion seeks dismissal for this reason, it is denied.

The defendants also allege that Goodwin has failed to plead a constitutional claim of deliberate indifference to serious medical needs.  To decide a motion to dismiss such as this, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible claim for recovery.  Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 63 (1st Cir. 2013).

A state actor in a correctional setting is subject to liability if she treats prisoners with "deliberate indifference to serious medical needs."  Leavitt v. Corr. Med. Servs., 645 F.3d 484, 497 (1st Cir. 2011) (quoting Estelle, 429 U.S. at 106).  Deliberate indifference involves a failure or refusal to act despite "knowledge of impending harm, easily preventable."  Id.  A trial-worthy claim must "satisfy both a subjective and objective inquiry."  Id.  The subjective inquiry calls for evidence that a defendant possessed a culpable state of mind amounting to "deliberate indifference to an inmate's health or safety."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks omitted).  The objective inquiry concerns the harm or need in question, which must involve "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'"  Id. at 843 (quoting Helling v. McKinney, 509 U.S. 25, 35 (1993)).

First, contrary to the defendants' assertion in their motion, there is no question but that, *objectively*, Goodwin's condition amounted to a serious medical need. Goodwin informed unnamed nurses of his medical difficulties at the time he entered the jail. (Second Amended Complaint ¶ 15.) Goodwin then submitted two additional emergency medical slips during his first four days at the jail describing his ongoing pain and worsening conditions caused by an increasingly debilitating urinary infection. According to the allegations, he was ignored both by correctional officers and medical staff. Finally, on the fifth day of incarceration, an unnamed nurse, who did not even exam Goodwin, advised over the phone that he should take a hot shower. (Id. ¶ 34.) When Goodwin collapsed from pain in the shower, he was finally escorted to the medical department. (Id. ¶¶ 36-38.) Nurses Maloney and Walters then became involved in "treating" Goodwin, although neither of them addressed the underlying reasons for acute pain and distress Goodwin had been suffering for the last five days, at best providing him with a band aid in the form of a catheterization, removing 800ml of urine. (Id. ¶ 40.) After Goodwin left the Somerset County Jail he was eventually hospitalized as a result of these urinary problems. (Id. ¶ 64.)

A medical need is "serious" if it has been diagnosed by a physician as needing treatment or is so obvious that even a lay person would see the need for medical attention. Leavitt, 645 F.3d at 497. The medical condition Goodwin suffered from, an acute urinary infection, was by objective measures a serious medical need. Any lay person would recognize that the inability to urinate over a five-day period while experiencing acute pain and distress was a serious matter.

Whether nurses Maloney and Walter were recklessly indifferent or merely negligent in their treatment of Goodwin requires drawing too fine a line in terms of the Rule 12 pleading standard on the type of facts alleged in the second amended complaint. In terms of the *subjective*

component of the deliberate indifference inquiry, the complaint's allegations at this juncture are sufficient to enable the reader to draw a plausible inference that nurses Maloney and Walter knew that Goodwin had been suffering for four days from the medical records that were available to them and yet took no meaningful steps to investigate or alleviate that suffering. While the nurses ask the court to draw the inference that they merely undertook a different course of medical treatment than the one Goodwin would have preferred, without a developed factual record it is an equally plausible inference that they chose to disregard his complaints and proceed on the assumption that he was due to be transferred and would soon be someone else's problem.  The complaint should not be dismissed as to them.

Medpro Associates, the other moving defendant, requires a different analysis.  Medpro, as the corporate employer, has moved to dismiss the complaint brought against it because the doctrine of respondeat superior does not apply to claims brought pursuant to 42 U.S.C. § 1983. In his response to the motion to dismiss, Goodwin fails to articulate a theory of liability as to Medpro, other than that multiple employees may have been deliberately indifferent to Goodwin's situation.  It is generally accepted that the standard for municipal liability under section 1983 applies to entities such as Medpro who have contracted to fulfill governmental responsibilities. See Leavitt, 645 F.3d at 504 (applying municipal liability standard to claims against private medical services entity, but treating the issue as conceded); Woodward v. Corr. Med. Servs. of Ill., Inc., 368 F.3d 917, 927 (7th Cir. 2004) (treating corporate entities as municipal entities in the context of section 1983 prison-medical-care actions).

Under section 1983, municipalities cannot be held liable for constitutional violations perpetrated by municipal employees simply because they are the employers.  Welch v. Ciampa, 542 F.3d 927, 941 (1st Cir. 2008) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691

(1978)).  Section 1983 claims against a municipal defendant will only be successful under Monell if the entity was responsible for a policy, custom, or practice that caused the violation in question.  Id.  Assuming that an underlying deprivation is established, proof of a municipal custom or policy claim involves two additional elements:

> First, the custom or practice must be attributable to the municipality, i.e., it must be "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice."  Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989).  Second, the custom must have been the cause of and "the moving force" behind the deprivation of constitutional rights.  Id. at 1157.

Miller v. Kennebec Cnty., 219 F.3d 8, 12 (1st Cir. 2000).  Together, these additional elements require the plaintiff to "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  Bd. of the Cnty. Comm'rs v. Brown, 520 U.S. 397, 402 (1997).

Goodwin has not plead that Medpro had a corporate "policy" or "custom" of denying medical treatment to inmates.  Nor has he alleged any other facts that would support imposing liability upon the corporation itself.  Just as a town or city cannot be held responsible for its officers' use of excessive force in effectuating an arrest in the absence of allegations that the policy-making officials of the town or city were somehow involved in causing the constitutional violations of the officers, so Medpro cannot be liable for the deliberate indifference of its medical staff in the absence of direct allegations against it and its policy-making officials.

Based on the foregoing, Defendants' Amended Motion to Dismiss (ECF No. 39) is granted as to Medpro Associates and denied as to Maloney and Walters.

*So Ordered.*
October 25, 2013          /s/ Margaret J. Kravchuk
                          U.S. Magistrate Judge