UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| MICHAEL R. GOODWIN, | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | 1:12-cv-00371-JCN |
| MEDPRO ASSOCIATES, | ) | |
| Defendant | ) | |

**DECISION ON MOTION FOR SUMMARY JUDGMENT**

In this action, Plaintiff Michael R. Goodwin contends that Defendants Loreen Maloney and Rhonda Walters acted with deliberate indifference regarding his serious medical needs while he was a pretrial detainee at the Somerset County Jail. The matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 73).[1]

After a review of the parties' summary judgment filings, and after consideration of the parties' arguments, as explained below, the Court denies the motion. The Court in part determines that a factual issue exists as to whether Plaintiff has exhausted his administrative remedies, which issue must be determined before the matter proceeds to trial. Accordingly, the Court will conduct an evidentiary hearing on the exhaustion issue.

**BACKGROUND FACTS**

The Court determines the facts based on the parties' Local Rule 56 statements and the record materials attached thereto, including a partially stipulated record. Where the parties dispute

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge "to conduct any and all proceedings, to enter final orders and judgment, and to conduct any jury or non-jury trial as required." (Consent to Magistrate Judge, ECF No. 57.)

the facts, the Court views the underlying record in the light most favorable to Plaintiff (the non-movant), draws all reasonable inferences in his favor, and resolves any evidentiary disputes in that light. *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014). The Court does not evaluate the credibility of witnesses or otherwise weigh the evidence. *Id.*

Medpro Associates is an independent contractor that provided health care services under contract with the Somerset County Jail ("SCJ"). Defendants Rhonda Walters and Loreen Maloney were at all relevant times employed by Medpro Associates to provide medical services to inmates at the Somerset County Jail – Walters as a nurse and Maloney as the nursing supervisor. Walters and Maloney are the only identified medical care providers that Plaintiff has named as Defendants.

Plaintiff arrived at SCJ, as a pretrial detainee, at approximately 3:35 p.m. on Friday, January 29, 2010. Shortly after his arrival, he went through the SCJ intake process. The jail records reflect that as part of the intake process, SCJ corrections officer Tara Hamlin and Medpro nurse Lisa Cates asked Plaintiff about his medical status and his health. One record, which Officer Hamlin prepared, reveals that Plaintiff responded in the negative when asked if he was suffering from a "sore throat, fever, or other infection" or if he had "any other medical problem that [Somerset County Jail] should know about." Despite this response, Plaintiff told Nurse Cates that he was experiencing burning when voiding since he had started new medication for the treatment of hepatitis C. At the time of his intake, Plaintiff was not suffering from abdominal pain.[2]

During the intake process, Plaintiff received a copy of the SCJ inmate handbook, which outlines the procedure for any medical complaints. Additionally, Plaintiff was also instructed that

---

[2] After an intake questionnaire is completed by a staff nurse, the record generated is placed in the inmate's file. After the intake is completed, staff nurses can review the intake information at any time to determine the history of medical complaints.

if he needed or wanted medical care, he had to complete a request form, which he could obtain from any SCJ corrections officer.

During the time period about which Plaintiff complains, Medpro staff nurses were scheduled to be at the SCJ every day from 6:00 a.m. to 10:00 p.m. The schedule for Medpro staff nurses consisted of two shifts – one from 6:00 a.m. to 2:00 p.m., and another from 2:00 p.m. to 10:00 p.m. Defendant Walters worked the 2:00 p.m. to 10:00 p.m. shift at all pertinent times.

Plaintiff completed two separate medical request forms, one on January 31, 2010, and the other on February 1, 2010. On a form dated January 31, 2010, Plaintiff asserted that he was "having trouble urinating, burns when urine comes out, have to push very hard for urine to come out." In completing this medical request form, Goodwin checked the box labelled "EMERGENCY," not the box labelled "ROUTINE." While the notations on the request do not reflect when Defendant Walters first received the request, in the section entitled "action taken," Defendant Walters wrote, "I/M brought to medical for voiding issue. Issue resolved. I/M back to A pod." The entry was not dated.

On the morning of February 1, 2010, Plaintiff was transported to Somerset County Superior Court for arraignment by Sergeant Wayne Kline and Officers Andrews and Murray. Sometime after returning to the pod in the late afternoon, Plaintiff filled out a second medical request form. This form, dated February 1, 2010, was the second and final medical request form that Plaintiff completed during the relevant time period. On the medical request form, Plaintiff wrote, "I'm still having trouble urinating. In a lot of pain after trying to pee – need to see doctor ASAP." Plaintiff also checked the box marked "EMERGENCY" rather than the box marked "ROUTINE."

The Somerset County Sheriff's Department Daily Log records for the SCJ ("SCJ log") reflect that sometime after 5:58 p.m. and before 6:45 p.m. on February 1, Plaintiff complained to

3

Corrections Officer Herrera that he was having difficulty urinating and that he had filed two related medical requests. After speaking with Plaintiff, Officer Herrera made a phone call, which Plaintiff believes was to the nurses' station. Upon completion of the call, Officer Herrera returned to Plaintiff's cell and told Plaintiff that a nurse suggested that Plaintiff take a shower because the hot water might help Plaintiff void. Officer Herrera also told Plaintiff that if the shower did not remedy his problem, Plaintiff would have to be catheterized. The SCJ log states that at 6:45 on February 1, Officer Herbest assisted Officer Herrera in moving Plaintiff from his cell to the shower area.

Plaintiff attempted to urinate while in the shower but collapsed due to severe pain. The SCJ log records a 6:58 p.m. "code blue" indicating a medical emergency regarding Plaintiff. Several corrections officers responded and transferred Plaintiff to the nurses' station. Defendant Walters attended to Plaintiff upon his arrival. According to Plaintiff, the medical attention provided by Defendant Walters was the first medical treatment that Plaintiff received following the submission of his two medical requests. While at the nurses' station, Defendant Walters telephoned Greg Ellis, a Medpro physicians' assistant, who, after a discussion regarding Plaintiff's situation, ordered Defendant Walters to catheterize Plaintiff. Defendant Walters performed the catheterization, which relieved Plaintiff's symptoms. The SCJ log notes that Plaintiff was returned to his cell on February 1.

Plaintiff disputes that the events occurred on February 1, 2010. He testified that they occurred on February 3 instead.[3] Plaintiff maintains that he spoke with Officer Fails (rather than

---

[3] Defendants argue that Plaintiff's account of the date is unreliable and outweighed by contrary evidence. The contrary evidence includes the several SCJ log entries that reflect February 1 as the date, a physician's order completed by Defendant Walters dated February 1, and a progress note completed by Defendant Walters dated February 1. (PA Ellis countersigned the physician's order on February 4, 2010.) In addition, Plaintiff testified that the day on which he received the catheterization was the same day he was taken to court by Officer Murray and Sergeant Kline. (The stipulated facts indicate that Kline and Murray transported Plaintiff to court on February 1.) The SCJ transportation records reflect that Sergeant Kline and Officer Brown transported Plaintiff to the court on February 3. Defendants contend (a) that Plaintiff does not have any evidence or information to suggest that the pertinent medical records were forged and (b) that Plaintiff does not have an explanation as to why multiple records would show that these events

4

Officer Herrera) at approximately 6:00 p.m. on February 1, 2010, while Officer Fails was doing his rounds in the A-pod housing unit. Plaintiff informed Fails that he was experiencing severe burning in his urethra and that he needed to see a nurse. Fails told Plaintiff that he would have to wait until the following day because there was no nurse on duty. Plaintiff responded, "okay." [4] The parties agree that Officer Fails and Officer Herrera do not work on the same day. Plaintiff's report of his symptoms to Officer Fails, therefore, could not have occurred on the day that Officer Herrera reported Plaintiff's symptoms to, and ultimately transported Plaintiff to, the nursing station.

Plaintiff does not recall any statements made by Defendants Walters or Maloney to Plaintiff or in Plaintiff's presence regarding his treatment. Plaintiff does not claim that he saw, spoke to or otherwise communicated with either Defendant Maloney or Defendant Walters until the evening of the code blue and catheterization. Neither Defendant Maloney nor Defendant Walters expressed any ill will towards Plaintiff at any time when they were in his presence while at the Somerset County Jail in the winter of 2010. In addition, neither Defendant Maloney nor Defendant Walters said anything to make Plaintiff believe that they were angry with Plaintiff or that they had any reason to want to cause him harm. Plaintiff also received medication that was distributed by Medpro medical technicians or nurses. Although Plaintiff had contact with the Medpro staff members multiple times each day that he was incarcerated at Somerset County Jail, Plaintiff did not complain to them about his symptoms or treatment.

---

occurred on February 1 and not February 3. Plaintiff, on the other hand, has identified a medical request form that reflects that nurse Cates reviewed his February 1 request on February 3 and wrote "inmate at court" with a time entry of "1100." This document arguably suggests that Plaintiff's issue was still unresolved as of 11:00 a.m. on February 3.

[4] Defendants state, and Plaintiff admits, that when Plaintiff spoke to Officer Fails about his symptoms, Plaintiff was not suffering from any visible symptoms and was able to walk, and stated that it was uncomfortable. Plaintiff did not fill out a medical request on February 2 or on February 3.

Defendant Maloney testified that a nurse should address an emergency request "at the next possible availability." Additionally, Defendant Maloney testified that a report of difficulty urinating is serious enough for a nurse's assessment. By SCJ policy, health care requests are screened daily by nursing staff and they conduct and document a brief inmate evaluation. When an inmate cannot attend regular sick call for some reason, health care staff have the discretion to schedule a meeting at another time.

SCJ and Medpro had a written policy regarding inmate grievances about medical care. The policy required the inmate to complete a grievance form and forward it to a shift supervisor. Plaintiff testified that on the morning of February 4, 2010, he completed a grievance form regarding his claims of the Defendants' deliberate indifference to his serious medical needs. He stated that he handed this grievance form to a corrections officer, who then placed it in the designated box for grievances located in the pod. The SCJ reports that it has no record of any grievance being filed by Plaintiff. The SCJ made no investigation or decision regarding any grievance by Plaintiff. Plaintiff states by affidavit that he never received any response to his grievance.[5] Plaintiff was transferred to the Maine Correctional Center on the morning of February 5, 2010.

The Prison Health Care and Mental Health Care Grievance Policy (No. 029) at the SCJ provides that "a level 1 grievance will be written on the appropriate form and forwarded to the shift supervisor," that "the supervisor will review and forward to the appropriate department who will review and answer the level 1 grievance." The Policy also states: "If a satisfactory resolution

---

[5] Defendants contend that the affidavit should be stricken as to every factual representation contained in it. (Reply Stmt. ¶ 33.) However, Defendants do not articulate a valid basis for striking the statement about the initial grievance or that fact that Plaintiff never received a response. The Court has disregarded Plaintiff's assertions that he did not receive an opportunity to complete the grievance process and that he could not have known how to proceed upon being transferred to another facility. Those assertions are matters for argument.

6

cannot be made then: A level 2 grievance will be written and forwarded to the jail administration who will review and forward to the appropriate department who may make a more thorough response to the grievance. A level 2 grievance will also be brought to the attention of the investigations officer who will follow this grievance through to its satisfactory conclusion." The Policy provides no direction for a procedure after level 2, but it does state "that grievances with the health care and mental health provisions will be addressed with the grievance procedure in place within the jail." (ECF No. 77-6.)

Plaintiff asserts that he wrote to Lieutenant Campbell at SCJ on two occasions after his transfer to MCC. In support of this statement, Plaintiff cites his responses to Defendants' requests for production of documents (see ECF No. 77-8) and copies of two hand-written letters that he produced in response. One letter is dated February 11, 2010; the other is dated April 16, 2010. The letters inquire about the outcome of Plaintiff's grievance.[6]

## DISCUSSION

Defendants argue that Plaintiff cannot proceed on his claim because Plaintiff failed to exhaust his administrative remedies and because Plaintiff has failed to demonstrate facts upon which a fact finder reasonably could conclude that Defendants were deliberately indifferent to a serious medical need.

**A.    Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary

---

[6] Plaintiff does not cite deposition testimony related to the letters. Additionally, although Plaintiff submitted an affidavit in opposition to the summary judgment motion, he did not attest therein that he sent follow-up letters to Lieutenant Campbell.

judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir.1998)).

The Court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Hannon v. Beard*, 645 F.3d 45, 47-48 (1st Cir. 2011). If the Court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, then there is a trial-worthy controversy and summary judgment must be denied to the extent there are supported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

**B.     Failure to Exhaust Administrative Remedies**

The Prison Litigation Reform Act (PLRA) provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In order to exhaust available administrative remedies, a prisoner must comply with the prison's administrative grievance procedures. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). "The fact that [Plaintiff] happened to be a prisoner in [different] locations, and under the custody of different officials, does not affect his obligation to exhaust his administrative remedies before filing suit." *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002). Failure to exhaust under the PLRA is an affirmative defense that

"must be raised and proved by the defense." *Cruz–Berríos v. González–Rosario,* 630 F.3d 7, 11 (1st Cir. 2010).

Under the SCJ grievance procedure, a prisoner must first complete a grievance form and forward it to a shift supervisor. If unsatisfied with the outcome of the initial filing, the prisoner must then write a "level 2" grievance and "forward" it to the jail administration. In their factual statement, Defendants have asserted that there is no record of Plaintiff having filed any grievance with the SCJ. In their Motion for Summary Judgment, Defendants also contend that Plaintiff did not send a grievance to the Maine Department of Corrections (MDOC), and thus Plaintiff has not satisfied the final step of the administrative grievance process.

Preliminarily, while Defendants point to evidence to support their contention that Plaintiff did not submit a grievance form regarding his medical care, a review of the record reveals a genuine issue of material fact as to whether Plaintiff initiated the grievance procedure. In particular, Plaintiff testified that he completed the grievance form on February 4, 2010, and handed it to a corrections officer who placed it in the box that would bring it to the supervisor's attention. A disputed issue also exists as to whether Plaintiff received a response to his grievance.[7] To the extent, therefore, that Defendants seek summary judgment based on Plaintiff's alleged failure to file an initial grievance form, Defendants are not entitled to relief.

In their Motion for Summary Judgment, however, Defendants assert not only that Plaintiff failed to exhaust level one and level two of the administrative grievance process, but also that he failed to pursue a "level three" grievance with the Maine Department of Corrections (MDOC). (Motion at 9.) The summary judgment record does not include any SCJ policy advising prisoners

---

[7] Plaintiff offers a statement that he wrote to Lieutenant Campbell at SCJ on two occasions after his transfer to MCC (Pl.'s Additional Statement ¶ 16, ECF No. 77), citing his counsel's response to a request for production of documents, to which he attached copies of two letters (ECF No. 77-8). Assuming the letters are properly in evidence, they would reinforce a finding that the level one grievance was ignored.

of the level three process. In the absence of the applicable SCJ policy, and given the lack of evidence of whether Plaintiff was aware of any such policy, whether Plaintiff was required to make, and, if so, whether he made, a third filing are unresolved issues of fact on the summary judgment record. Summary judgment, therefore, based on Defendants' exhaustion argument, is not warranted.

Because the summary judgment record does not conclusively establish whether Plaintiff has exhausted his administrative remedies, if Defendants are not otherwise entitled to summary judgment, the Court will conduct an evidentiary hearing to determine whether Plaintiff properly exhausted his claims. *See Albino v. Baca*, 747 F.3d 1162, 1170-71 (9th Cir. 2014) (en banc) ("If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue."), *petition for cert. filed* July 2, 2014 (No. 14-82); *Messa v. Goord,* 652 F.3d 305, 310 (2d Cir. 2011) ("[T]he Seventh Amendment does not guarantee a jury trial on factual disputes regarding administrative exhaustion under the PLRA."); *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010) ("Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, we conclude that judges may resolve factual disputes concerning exhaustion without the participation of a jury.").

**C.     Deliberate Indifference**

"A state and its subdivisions are under a substantive obligation imposed by the Due Process Clause of the Fourteenth Amendment to refrain at least from treating a pretrial detainee with deliberate indifference to a substantial risk of serious harm to health," *Coscia v. Town of Pembroke*, 659 F.3d 37, 39 (1st Cir. 2011), or with "deliberate indifference to serious medical needs." *Feeney*

10

*v. Corr. Med. Servs.*, 464 F.3d 158, 161 (1st Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976)). To be viable, a deliberate indifference claim must satisfy both an objective and a subjective standard. *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011). The objective standard evaluates the seriousness of the risk of harm to health. There must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). A medical need is "serious" if it has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would recognize a need for medical intervention. *Leavitt*, 645 F.3d at 497; *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991)). The subjective standard concerns the culpability of the defendant. There must be evidence that a particular defendant possessed a culpable state of mind amounting to "deliberate indifference to an inmate's health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). Deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable." *Feeney*, 464 F.3d at 162 (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)). Where pretrial detainees are concerned, a showing of deliberate indifference does not require proof of a subjective purpose to cause harm, but it does require proof of a greater degree of culpability than negligence. *Coscia*, 659 F.3d at 39 (Souter, J.). In this context, deliberate indifference "may consist of showing a conscious failure to provide medical services where they would be reasonably appropriate." *Id.* The focus of the deliberate indifference analysis "is on what the jailers knew and what they did in response." *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002). Defendants argue that they are entitled to summary judgment because Plaintiff has not satisfied either the objective or the subjective standards that govern his claim.

As to the objective standard, Defendants argue that Plaintiff's condition was not objectively serious prior to the code blue call. (Motion at 13.) The Court is satisfied that Plaintiff has raised a genuine issue whether his condition was serious enough to make the need for medical intervention recognizable to even a layperson. A jury could conclude that medical services were "reasonably appropriate" under the circumstances, which include two medical request forms suggesting urine retention and significant pain when voiding. *Coscia*, 659 F.3d at 39.

Defendants argue that Plaintiff has not and cannot demonstrate deliberate indifference from a subjective standpoint because they provided Plaintiff with catheterization within a reasonable period of time. In particular, they maintain that the treatment occurred "within hours of providing his second medical request form and within 24 hours of providing his first medical request form." (Motion at 14.) Defendants argue, "There is no evidence that either of them knew of [Plaintiff's] symptoms at any point prior to the minutes before he was treated." (Motion at 19.) In support of their argument, Defendants rely upon the record evidence that suggests that Plaintiff completed the medical request form on February 1, and that Defendants attended to Plaintiff on that date. While Defendants have identified evidence to support their argument, the record evidence also includes a January 31 medical request form, with Defendant Walker's signature, which constitutes evidence from which a fact finder could conclude that she was on duty when the first request was presented, and that she learned of the medical situation before Defendants contend. (See Maloney Deposition Transcript at 28-29, ECF No. 77-2.) Additionally, the issue of when treatment was rendered is very much in dispute. If, as Plaintiff contends, Plaintiff was not treated until February 3, despite the submission of a medical request on January 31, Defendants' contention that they acted within 24 hours of receiving the first medical request form would fail, and generate an issue

as to whether Defendants "conscious[ly] fail[ed] to provide medical services where they would be reasonably appropriate." *Coscia*, 659 F.3d at 39.[8]

## CONCLUSION

Based on the foregoing analysis, the Court denies Defendants' Motion for Summary Judgment. In accordance with this Decision, the Court will schedule an evidentiary hearing to resolve whether Plaintiff exhausted administrative remedies.

**SO ORDERED.**

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 9th day of September, 2014.

---

[8] In his Amended Complaint, Plaintiff included an allegation that his urine was not tested following the catheterization. (Am. Compl. ¶ 40.) Defendants challenged in their Motion any contention that the failure to test the urine amounted to a separate instance of deliberate indifference. (Motion at 16-18.) Plaintiff's summary judgment presentation does not attempt to develop this separate theory. (Plaintiff's Opposing Statement ¶ 23, ECF No. 77.) The Court, therefore, treats any such claim as waived, though it is not clear that such a claim is set forth in the Amended Complaint.